IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MIKE'S, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 3:13-cv-232-DRH-DGW |
| THE VESSEL WHITE STAR ONE, and its ) | |
| engines, tackle, equipment, furnishings, and ) | |
| other appurtenances, *in rem*, and WHITE ) | |
| STAR LINE, LLC and JOHN JOSLYN, *in* ) | |
| *personam,* ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS WHITE STAR LINE, LLC'S AND JOHN JOSLYN'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR DISBURSEMENT OF FUNDS FOR *CUSTODIA LEGIS* EXPENSES**

COME NOW defendants, White Star Line, LLC ("White Star Line") and John Joslyn, by and through their undersigned attorney, and for their Memorandum in Opposition to Plaintiff's Motion for Disbursement of Funds for *Custodia Legis* Expenses, state as follows:

**I. INTRODUCTION**

As more fully explained below, Plaintiff's Motion for Disbursement of Funds for *Custodia Legis* Expenses should be denied, or alternatively, the reimbursement for daily mooring fees should be reduced to $121,200, because: (1) Mike's provides no reasonable basis for a $1,000 daily mooring rate; (2) the most reasonable measure of Mike's *custodia legis* expenses is the pre-arrest daily fee agreement between Mike's and White Star Line; and (3) Mike's should not be permitted to use an unreasonable day rate in conjunction with its court-appointed custodianship as a mechanism for elevating its low priority pre-seizure charges into a first priority position.

1

## II. STATEMENT OF FACTS

Plaintiff Mike's, Inc. ("Mike's") filed its Motion for Disbursement of Funds for *Custodia Legis* Expenses on May 8, 2014. Mike's seeks reimbursement for *custodia legis* expenses in the amount of $437,026.16, which includes $405,000 in daily fleeting charges (405 days at $1,000 per day) in addition to advertising, insurance, Marshal's fees, shore power usage, and upkeep. Doc. 69 at p.5.

Prior to the underlying litigation, Mike's and White Star Line had entered into an agreement in 2008 under which White Star Line would pay a daily rate of $200 per day to moor at Mike's facility. Affidavit of John Joslyn, attached hereto as Exhibit A. Mike's unilaterally increased the daily mooring rate to $300 in January 2011 and then to $500 in November 2011. *Id.* White Star Line paid in full the first invoice charging $300 per day, but it did not consent to and never paid the $500 daily rate charged by Mike's beginning in November 2011, or the $1,000 daily rate charged by Mike's beginning in February 2013. *Id.*

Approximately one month after doubling its daily mooring fee to $1,000, Mike's requested to be named substitute custodian. Doc. 5. Mike's served as custodian of the vessel after this Court granted Mike's custodial status on March 14, 2013. Doc. 8. The Court ordered that Mike's would be "reimbursed for its services, at a daily rate to be determined by this Court at a later date" to be paid out of the proceeds of the vessel's sale. Doc. 8. Mike's served as custodian of the vessel from March 14, 2013 to April 21, 2014, totalling 404 days. The WHITE STAR ONE was sold on April 4, 2014 for $600,000.

### III.  ARGUMENT

A.  **Standard for Custodia Legis Expenses**.

Generally, a service or property that is advanced to preserve and maintain a vessel under seizure and that is furnished upon authority of the court is allowed as a *custodia legis* expense. *Associated Metals & Minerals Corp. v. ALEXANDER'S UNITY MV*, 41 F.3d 1007, 1018 (5th Cir. 1995). *Custodia legis* expenses are granted preferential treatment over other claims so long as the expense was incurred upon the authority of the court or its officer and is "for the common benefit of those interested in the fund." *Oil Shipping (Bunkering) B.V. v. Sonmez Denizcilik Ve Ticaret A.S.*, 10 F.3d 176, 182 (3d Cir. 1993). Only those expenses for services or property furnished the *after* a vessel's seizure can qualify as a *custodia legis* expense, while expenses for services or property provided *before* the vessel's seizure are not incurred during *custodia legis*. *United States v. One (1) 254 Ft. Freighter, M/V Andoria*, 570 F. Supp. 413, 416 (E.D. La. 1983) *aff'd sub nom. United States v. One (1) 254 Ft. Freighter, The M/V Andoria*, 768 F.2d 597 (5th Cir. 1985). The amount and reasonableness of *custodia legis* fees are issues of fact to be determined by the fact-finder. *Capital One v. M/Y VOYAGER*, 2009 WL 4782127 (S.D. Fla. Dec. 7, 2009).

B.  **Mike's Provides No Reasonable Basis for a $1,000 Daily Mooring Rate**

   1. Mike's is Not a Fleeting Facility and Any Comparison to Daily Fleeting Rates is Inappropriate[1]

To support its claim for $1,000 per day, Mike's first offers the testimony of Mike's own employee (Amy Marko) that she had heard that a fleeting facility had

---

[1] As an initial matter, Mike's incorrectly alleges that it is entitled to 405 days worth of *custodia legis* expenses from its duration as substitute custodian from March 14, 2013 until April 21, 2014. The correct figure for that time period is 404 days, which is inclusive of both March 14, 2013 and April 21, 2014.

3

allegedly quoted John Joslyn a rate of $1,000 a day.  Doc. 69 at p. 7; Doc. 69-1 at p. 38, lines 17-25.  This is hearsay and, in any event, Mr. Joslyn denies it.  *See* Ex. A.  Mike's then attempts to establish the reasonableness of its $1,000 per day rate by referring to the affidavits of two fleeting companies which quote rates of $4,500 and $5,000 per day.  *Id*.  Those affidavits clearly explain that the $4,500-5,000 rate is attributable to the fact that mooring the WHITE STAR ONE in one of their fleets would result in the loss of daily fleeting and switching charges for an entire fleet of barges.  Docs. 5-1, 5-2.  Mike's has not submitted any evidence that the mooring of the WHITE STAR ONE at Mike's dock resulted in a loss of revenue-generating fleeting space.  Furthermore, the only evidence in this case thus far of what someone other than Mike's would charge for a comparable docking arrangement is White Star Line, LLC's agreement with Polestar Marina.  Polestar Marina agreed to moor the WHITE STAR ONE at a rate of $200 per day.  Doc. 39-1 at ¶ 10; Doc. 39-2; Doc. 39-3.  Polestar Marina's offer to moor the vessel at one-fifth the rate that Mike's demands as *custodia legis* expenses is evidence that Mike's $1,000 daily rate is patently unreasonable.[2]

       Because Mike's is not a fleeting facility and because the WHITE STAR ONE did not occupy any space that would have been used for a fleet, any reference to fleeting rates should be rejected by this Court.

---

[2] Mike's charged a $200 daily rate for 27 monthly invoices (Oct. 2008—Dec. 2010), a $300 rate for 10 monthly invoices (Jan. 2011—Oct. 2011), a $500 rate for 15 monthly invoices (Nov. 2011—Jan. 2013), and a $1,000 rate for 2 monthly invoices (Feb. 2013—Mar. 2013).  This is an average rate of $331.48 per day.

2. The $1,000 Rate Was Never Consented To or Paid by White Star Line

Mike's argues that because it unilaterally increased its daily rate to $1,000 before the seizure of the vessel, the reasonable rate is $1,000. White Star Line did not consent to the $1,000 fee and never paid it. *See* Ex. A. In fact, Mike's own employee, Amy Marko, testified that although she was familiar with the invoicing of White Star Line, she had no knowledge of the sudden increase to $1,000 per day. Doc 69-1 at p.41. Mike's made its increase to $1,000 the month before its request to become substitute custodian, no doubt in an effort to preemptively establish a rate for eventual *custodia legis* expenses. Consequently, the $1,000 pre-seizure demand is not a proper or fair measure for post-seizure expenses.

C. **The Most Reasonable Measure of Mike's *Custodia Legis* Expenses is the Pre-Arrest Fee Agreement between Mike's and White Star Line**

The pre-arrest fee agreement for vessel dockage is relevant to determining a reasonable post-arrest wharfage rate. *Humphreys Railways, Inc. v. F/V Nils S*, 603 F. Supp. 95, 98 (E.D. Va. 1984) (disallowing a post-seizure wharfage charge of $200 per day in favor of pre-seizure fee wharfage charge of $22 per day); *see also Bollinger Quick Repair, L.L.C. v. Le Pelican MV*, 2000 WL 798497 (June 20, 2000) (relying on pre-seizure dockage fee rate as a basis for determining reasonableness of post-seizure dockage fee rate).

Absent any evidence by Mike's of a fair daily mooring rate other than inapposite comparisons to fleeting operations, discussed *supra*, the most reasonable method to calculate the *custodia legis* expense for mooring the WHITE STAR ONE is to use the parties' pre-arrest fee agreement. Mike's and White Star Line initially agreed to a mooring fee of $200 per day in 2008. After Mike's increased its fee to $300 in 2011, White Star Line paid the first invoice in full, indicating an agreement between the parties on a daily rate of $300. White Star Line did

5

not, however, ever consent to or pay either the $500 or $1,000 per day rates. *See* Ex. A. Because the parties reached an arm's length agreement to moor the WHITE STAR ONE for $300 before the vessel's arrest, the $300 rate forms the most reasonable basis upon which to determine the proper daily mooring rate. *See Bollinger Quick Repair*, 2000 WL 798497.

### D. Mike's Should Not Be Permitted to Use Its Court-Appointed Custodianship as a Means to Convert a Pre-Seizure Debt into a First Priority Lien.

*Custodia legis* expenses receive preferential treatment over other claims so long as the expense was incurred upon the authority of the court and for the common benefit of those interested in the fund. *Oil Shipping (Bunkering) B.V.*, 10 F.3d at 182 (3d Cir. 1993). Only those expenses for services or property furnished the **after** a vessel's seizure can qualify as a *custodia legis* expense, while expenses for services or property provided before the vessel's seizure are not incurred during *custodia legis*. *United States v. One (1) 254 Ft. Freighter, M/V Andoria*, 570 F. Supp. at 416 (E.D. La. 1983).

By seeking $1,000 per day, Mike's is clearly attempting to collect much more than is reasonable in an effort to effectively get first priority status for both pre-seizure and post-seizure amounts due. Mike's should not be allowed to leverage its court-appointed role as custodian as a means to collect on pre-custodial debt.

### IV. CONCLUSION

For the foregoing reasons, defendants White Star Line, LLC and John Joslyn pray that the Court will deny Plaintiff's Motion for Disbursement of Funds for *Custodia Legis* Expenses During Vessel Seizure or, alternatively, reduce the *custodia legis* expenses for daily mooring fees to $121,200 (404 days at the $300 daily rate).

/s/ Theodore H. Lucas
Theodore H. Lucas, # 06203138
Jeremy T. Staley, # 06315760
FOX GALVIN, LLC
One South Memorial Drive, 12th Floor
St. Louis, MO 63102
314-588-7000
314-588-1965 (Fax)
tlucas@foxgalvin.com
jstaley@foxgalvin.com


Attorneys for Defendants
The Vessel WHITE STAR ONE, White Star Line, LLC, and John Joslyn


**CERTIFICATE OF SERVICE**

   The undersigned certifies that service was made by means of the Notice of Electronic Filing, this 27th day of May, 2014, to the following counsel of record:

Mr. Robert Nienhuis
Goldstein and Price, L.C.
The Gateway Tower, Suite 1000
One Memorial Drive
St. Louis, MO 63102-2449

Mr. David G. Wasinger
Mr. James S. Cole
The Wasinger Law Group, P.C.
Magna Place, Suite 875
1401 S. Brentwood Blvd.
St. Louis, MO 63144

Mr. Andrew S. Buchanan
Buchanan, Williams & Stilley, P.C.
7908 Bonhomme, Suite 200
St. Louis, MO 63105


/s/ Theodore H. Lucas